David J. Millstein (California SBN 87878)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Suite 200
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile: (415) 348-0336

Attorneys for Plaintiff
JANE DOE

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JANE DOE, an individual;<br><br>                Plaintiff,<br>v.<br><br>THE MEDICAL COLLEGE OF WISCONSIN, INC. dba Medical College of Wisconsin; and DOES 1-10,<br><br>                Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR:**<br>**1. Violation of the Americans with Disabilities Act**<br>**2. Violation of the Rehabilitation Act**<br>**3. Breach of Contract**<br>**4. Promissory Estoppel**<br>**5. Preliminary Injunction**<br>**6. Declaratory Relief**<br><br>**JURY DEMAND** |

## GENERAL ALLEGATIONS

### A. The Parties

1. Plaintiff Jane Doe ("Doe") was, from about August 2010 to about late 2015, a full-time student at Defendant Medical College of Wisconsin, until she was dismissed in December 2015. Plaintiff is, and at all times relevant herein was, pursuing a Doctor of Medicine ("MD") degree, and is committed to completing such pursuit. Plaintiff is an individual over the age of eighteen. Plaintiff has filed this complaint anonymously because the litigation involves highly sensitive matters of a personal nature, and disclosure of Plaintiff's true identity will pose a severe risk of personal and professional harm to which Plaintiff is particularly vulnerable. Plaintiff proceeding anonymously will not prejudice the Defendant nor injure the public interest. There is no alternative mechanism for protecting Plaintiff's identity.

2. Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein, Defendant The Medical College of Wisconsin, Inc. dba Medical College of Wisconsin ("MCW"), is a corporation and a private and accredited medical school, organized and existing under the laws of the State of Wisconsin, with its principal place of business in Milwaukee, Wisconsin.

### B. Jurisdiction & Venue

3. This Court possesses federal question jurisdiction under 28 U.S. Code § 1331. This case is a civil action arising under Title III of the federal Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. §§ 12181–12189 and the Rehabilitation Act of 1973 ("Rehabilitation Act") 29 U.S.C. §§ 701-797.

4. Venue is proper as a substantial part of the events giving rise to the claims that occurred in Milwaukee, Wisconsin. Defendant MCW is an entity incorporated in the State of Wisconsin, with its primary place of business in Milwaukee, Wisconsin.

### C. Background

5. Plaintiff graduated cum laude with a degree in biochemistry and cell biology at the University of California, San Diego. In 2010, MCW accepted Plaintiff into its Medical Degree program. In reliance of such acceptance, Plaintiff relocated to Milwaukee, Wisconsin, enrolled in MCW, and paid her tuition costs to MCW with the expectation that she would complete the program and receive her MD.

6. In order to graduate from a medical school and obtain a license to practice medicine in the United States, an individual must generally pass a three-step United States Medical Licensing Exam ("USMLE") administered by, and/or sponsored by, the Federation of State Medical Boards and the National Board of Medical Examiners. USMLE Step 1, Step 2 CS, and Step 2 CK are typically completed while still in medical school; USMLE Step 3 is generally taken after graduation and receipt of a MD.

7. USMLE Step 1 assesses whether a candidate can apply scientific fundamentals to the practice of medicine. USMLE Step 2 CS tests the ability to examine and diagnosis simulated patients. The USMLE Step 2 CK is a nine-hour-long multiple-choice test that assesses clinical medical knowledge.

8. Under USMLE rules, only candidates who are graduates of, or currently enrolled in an accredited U.S. medical school, such as MCW, may take the exam. The USMLE allows students to take each step up to six (6) times.

9. The MCW policy in effect at the time of Plaintiff's enrollment was stated in MCW's Student Handbook ("Handbook"). Under the terms of the Handbook, a student must take the USMLE Step 1, Step 2 CS, and Step 2 CK to maintain eligibility to graduate with a MD. A section entitled "MCW Requirements for a Medical Degree" states students must pass Step 1 and Step 2 CK, but does not disclose the requirement that a candidate pass the USMLE within three attempts. A later section in the Handbook entitled "Guidelines of the Academic Standing Committee Medical College of Wisconsin Evaluation and Promotion System" states that "students have three opportunities each to pass the tests. Additional opportunities are permitted with exceptional extenuating circumstances." Failure to pass USMLE Step 1 on the third attempt will be "grounds for dismissal", while failure to pass USMLE Step 2 CS and Step 2 CK on the third attempt "may place the student in jeopardy of losing degree candidate status and denial of the M.D. degree." A passing score for the USMLE Step 2 CK must be posted no later than 6 months after a student's scheduled graduation.

10. Under the Handbook, a student is "expected" to complete the requirements for a MD degree within six (6) years, and to "complete the curriculum of any given academic year in no more than two calendar years." The expectation applies equally to all students without exception.

11. The Handbook provides a due process-type procedure for the dismissal of students, which requires that Defendant provide notice that dismissal is under consideration; the basis upon which dismissal is contemplated; notice that a hearing would occur; and the

date, time and place of the hearing. Defendant must further provide a copy of the dismissal procedures, which includes the right to appeal; the right to present witnesses, data and evidence; the right to confront witnesses; the right to tape-record the hearing; the right to be represented by legal or academic counsel; and the right to withdraw prior to the hearing.

12. The rules set forth in the Handbook further provides that if the Academic Standing Committee adjudicates a dismissal, it must supply a written report with a "summary of facts supporting their findings"; a statement of the action that it has decided to take; and the effective date of the action. A notice of this ruling must be sent to the student by registered or certified mail.

13. Following Plaintiff's enrollment at MCW in August 2010, Plaintiff began to experience an exacerbation of prior physiological and behavioral symptoms that would later be diagnosed as Generalized Anxiety and Major Depressive Disorder. These conditions substantially limit Plaintiff's ability to pass medical licensing and pre-licensing examinations, and other major life activities.

14. In particular, Plaintiff's mental health disorders make passing the USMLE Step 2 CK particularly challenging, as this test requires candidates to be able to concentrate for an extended period of time – a task that is especially difficult with Plaintiff's disability.

15. Plaintiff advised MCW of her psychological disabilities.

16. On November 29, 2012, Plaintiff discussed her psychological issues generally with the Academic Standing Committee.

17. On November 21, 2013, Plaintiff met with Jennifer Janowitz, Academic and Career Developmental Specialist at MCW, concerning her anxiety causing difficulties with the test. Ms. Janowitz acknowledged her anxiety, but did not advise her that accommodations could be made to accommodate this condition.

18. MCW has no information, procedures, or processes designed to ensure that students with disabilities are not excluded from MCW's services, or otherwise treated differently by the school in the absence of disability accommodations, including the availability of auxiliary

aids and services. Plaintiff is informed and believes, and thereon alleges, that MCW has no ADA office or coordinator for students with disabilities. The Handbook provides no acknowledgement that MCW is bound to follow the ADA, or information concerning the ADA, including a student's rights to seek accommodations.

19. Plaintiff's disabilities substantially limited her ability to prepare and take the USMLE, particularly the portions of the test that require memorization and application of medical knowledge and clinical science. As such, Plaintiff failed the USMLE Step 2 CK three times around October 2014, December 2014 and March 2015. Plaintiff was an otherwise qualified MD candidate, and was a student in good standing at the time she failed the USMLE Step 2 CK the third time. In fact, Plaintiff was accepted into a prestigious residency program and has fulfilled all other requirements for graduation.

20. On March 9, 2015, the Academic Standing Committee advised Plaintiff that they were "quite concerned" about her failure to pass the USMLE Step 2 CK the third time. She was further offered the possibility of "discussing" her issues with the Academic Standing Committee. The Academic Standing Committee did not meet with Plaintiff, however, and Dr. Dawn S. Bragg, PhD told her that if she wrote "a letter", the school would let her take the exam a fourth time.

21. In June 2015, Plaintiff sought and received treatment from a MCW Psychiatrist and a MCW Licensed Professional Counselor for her psychological disabilities. These mental health services offered by the school did not provide Plaintiff with information as to how she could seek accommodation for her disabilities. Plaintiff was also prescribed psychiatric medications by the MCW doctor, which caused extreme side effects of drowsiness that exacerbated her inability to take the tests. MCW, including Dr. Bragg and Richard L. Holloway, PhD, were informed that Plaintiff was receiving therapy during this time, and yet failed to provide any information concerning the availability of an accommodation.

22. As Plaintiff struggled to adjust to the treatment and her medication, she received an email from the MCW registrar on October 26, 2015 demanding her to sit for and pass the

USMLE Step 2 within 20 days, by November 15, 2015, to remain eligible to receive her MD. The November 15, 2015 date was calculated on Plaintiff's scheduled date of graduation of May 15, 2015. While MCW knew, or should have known, of Plaintiff's disabilities at this time, it did not offer Plaintiff an accommodation or advise Plaintiff of her legal rights to do the same.

23. As a result of the email, Plaintiff rushed to take the USMLE Step 2 on November 18, 2015. As a result of her disability, the effects of the psychotropic medication and an eye infection, such that she could only make use one eye, Plaintiff did not pass the USMLE Step 2 CK on this fourth occasion. She missed a passing score by only 6 points out of 209. (Her score would have been a passing score up until July 2014.)

24. On December 10, 2015, the Academic Standing Committee of MCW convened and summarily dismissed Plaintiff. Plaintiff was not provided notice of the meeting, and did not know it was going to occur. Plaintiff did not receive any of the procedural safeguards afforded to students in the Handbook, including the ability to present evidence, witnesses, or arguments in support of her position. The decision did not contain the required findings, and failed to address her disabilities and basis of her request for accommodation. Defendants did not send a registered or certified letter to Plaintiff advising her of their decision as the rules required.

25. The decision was mailed to her school address in Wisconsin during holiday break, when Defendants knew, or should have known, that Plaintiff was out-of-state. Further, Defendants did not send a copy to Plaintiff's email, which they regularly used.

26. On January 5, 2016, unaware that she had been dismissed, Plaintiff cited her mental health treatment and requested an accommodation to her taking the USMLE via email. The Academic Standing Committee responded the same day via email and informed her that she had been dismissed. Plaintiff was told that the "committee has made a final decision" with regards to her dismissal.

27. On February 8, 2016, Plaintiff sent an email to the Academic Standing Committee repeating her request for accommodation. She cited her mental health issues and

included supporting medical records and letters from her family, psychiatrist, and therapist.

28. The Academic Standing Committee convened again on February 18, 2016 after receiving Plaintiff's medical records confirming her anxiety and depression. As before, Plaintiff received no notice of the hearing, no opportunity to be heard, or any of the procedural rights guaranteed to Plaintiff in the Handbook. The school thereafter mailed a letter, which failed to include any of the requirements or findings. It also did not discuss Plaintiff's disabilities or whether it was considered, and stated that the decision was final.

29. As a result of MCW's dismissal of Plaintiff, she is no longer enrolled in the MCW and cannot take the USMLE, which requires a student to be enrolled in order to take the test up to six (6) times.

## FIRST CAUSE OF ACTION

### Violation of the ADA (42 U.S.C. § 12101)

30. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

31. Title III of the ADA prohibits discrimination based on disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of places of public accommodation. 42 U.S.C. § 12182. Under the ADA, the term "disability" means: "(a) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102. The ADA rule defines a disability to include "[a]ny mental or psychological disorder, such as … emotional or mental illness." Anxiety disorders such as Plaintiff's are recognized "impairments" under the Act. *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities,* EEOC Notice Number 915.002 (March 5, 1997), https://www.eeoc.gov/policy/docs/psych.html (counting anxiety disorders, including panic disorders, as mental illnesses under the ADA).

32. At all times relevant to this action, Plaintiff's Generalized Anxiety and Major Depressive Disorder were disabilities and mental impairments within the meaning of Title III of the ADA, and met the essential eligibility requirements for the receipt of the services, privileges and accommodations of the school, in which disability interfered with a major life activity, including taking of the USMLEs. 42 U.S.C. § 12182.

33. At all times relevant to this action, Plaintiff's vision impairment also fell within the meaning of Title III of the ADA, and met the essential eligibility requirements for the receipt of the services, privileges and accommodations of the school, in which disability interfered with a major life activity, including taking of the USMLEs. 42 U.S.C. § 12182.

34. At all times relevant to this action, MCW was a post-graduate private school, and a "place of public accommodation" within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(J).

35. The taking of USMLEs are a major life activity. Plaintiff's Generalized Anxiety, Major Depressive Disorder, and vision limitations substantially limited her ability to prepare for, and take, the USMLEs.

36. As alleged herein, Defendants were aware, or should have been aware, of Plaintiff's disabilities, and recognized Plaintiff's disabilities. Defendants received repeated formal and informal, constructive and actual, written and oral notice of Plaintiff's disabilities. Defendant further received medical documentation of Plaintiff's disabilities.

37. Plaintiff made informal and formal, oral and written requests to take the USMLE Step 2 in a manner that accommodates her disabilities that were timely. Defendant was in the position to respond to Plaintiff's requests, as Defendant could grant an additional USMLE Step 2 test up to six (6) times, and extend related time limits.

38. Defendants discriminated against Plaintiff on the basis of her disabilities in the full and equal enjoyment of the services, academic adjustments, and accommodations of MCW; by, inter alia, failing to make reasonable accommodations, including, but not limited to, prohibiting her from taking the USMLE up to six times as permitted by the USMLE, not

modifying the six (6) year requirement to accommodate such further testing, not modifying the requirement that a candidate must post a passing score no later than 6 months subsequent to a graduation date; and revoking her status as a student. Plaintiff sought additional time so that she may take the test with the benefit of mental health treatment. Yet, Defendant's failure to provide these accommodations deprived Plaintiff of services, facilities, privileges, advantages, and accommodation in the most integrated setting appropriate to Plaintiff's needs. Providing the measures would not cause Defendant to experience an undue burden or fundamental alteration in Defendant's services, facilities, or operations.

39. Defendants were aware of Plaintiff's disabilities when they failed to make such accommodations. They further continued to offer accommodations after Plaintiff expressly sought them based on her disabilities on January 5, 2016 and February 8, 2016. Defendants failed to consider an accommodation for her disabilities when dismissing her, and denied her the due process procedural safeguards afforded to non-disabled students, as set forth in the Handbook.

40. Defendant's discrimination against Plaintiff was caused, or aggravated in part by, Defendants having no policies and procedures that would ensure that Plaintiff and other individuals with disabilities are not excluded, denied services, or otherwise treated differently at MCW, and their taking of the USMLE exams. This includes the creation and implementation of policies and procedures for the school and related school service-providers, to refer persons with known disabilities to appropriate resources, advising them of rights under the ADA, including the right to request and receive accommodations, so that such individuals can graduate from the MD program in a manner that accommodates their disability. The absence of these policies and procedures created standards or criteria with the effect of discriminating against Plaintiff based on her disabilities, and perpetrating discrimination based on disability, so that Plaintiff and other disabled students are not able to fully enjoy the services, facilities, privileges, advantages and accommodations offered by MCW and its MD curriculum. The

accommodations necessary for Plaintiff's disabilities would not cause undue burden, significant difficulty or expense on Defendant, nor interfere with the mission of the school.

41. Defendant further discriminated against Plaintiff by failing to make reasonable modifications in its policies, practices, or procedures when such modifications were necessary to ensure Plaintiff would have access to the services, facilities, privileges, advantages or accommodations provided by MCW. Defendants failed to make reasonable modifications even when Plaintiff requested that they do so on January 5, 2016 and in February 2016.

42. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer hardship, anxiety, and interruption/cessation of her medical education.

43. Plaintiff is informed, believes and thereon alleges, that Defendants committed the acts and omissions alleged herein, with intent and or reckless disregard of Plaintiff's rights.

44. Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. § 12188(a).

45. Injunctive relief is necessary as Plaintiff will suffer irreparable harm if Defendants do not afford reasonable accommodations for her disabilities by not enforcing its three (3) exam limit and accompanying six (6) year limitation on graduation, and if she is not able to take the USMLE Step 2 exam expeditiously while this case proceeds. While Plaintiff is diligently engaged in study and review for the USMLE Step 2 exam, her knowledge base is deteriorating with the passage of time and the loss of continuing academic support. Moreover, most medical licensing authorities require that all USMLE exams be completed within a seven-year period, which would end in 2021 for Plaintiff. Plaintiff has a likelihood of success on the merits for the reasons stated in this complaint, and there is a chance that this lawsuit may not conclude in time for Plaintiff to complete all three steps of the USMLE. Further, Plaintiff has already paid over $217,214.50 in tuition to MCW towards her MD.

46. Wherefore Plaintiff prays relief as set forth below.

## SECOND CAUSE OF ACTION

**Violation of Section 504 of the Rehabilitation Act (29 U.S.C. §§ 701-797)**

47. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.
48. Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance".
49. Plaintiff is otherwise qualified to participate in the services, programs, or activities that are provided to individuals at MCW. *See* 29 U.S.C. §§ 794(b).
50. MCW is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.
51. Solely by reason of her disabilities, Defendants excluded Plaintiff from matriculation at MCW, and from an education adjusted to her needs. Defendants have denied Plaintiff further USMLE Step 2 attempts as permitted by USMLE, and her MCW degree candidate status.
52. Defendant was on notice of Plaintiff's disabilities and her desire for accommodations. Yet, Defendant failed to engage in an interactive process with Plaintiff to consider her requested accommodations under the Rehabilitation Act. In fact, Defendant obstructed and delayed the interaction process by unilaterally dismissing Plaintiff, and presenting the decision to Plaintiff in a manner that precluded further interaction.
53. Defendants discriminated against Plaintiff on the basis of her disabilities, the full and equal enjoyment of the services, academic adjustments, and accommodations of MCW by, inter alia, failing to make reasonable accommodations, including, but not limited to, prohibiting her from taking the USMLE up to six times as permitted by the USMLE, not modifying the six year requirement to accommodate such further testing, not modifying the requirement that a candidate must post a passing score no later than 6 months subsequent to a graduation date, revoking her status as a student with the effect of

disabling her from taking the test and denying her procedural safeguards to students who are being considered for dismissal, but not disabled. Plaintiff requires additional time so that she may take the test with the benefit of mental health treatment. Yet, Defendant's failure to provide these accommodations deprived Plaintiff of services, facilities, privileges, advantages, and accommodation in the most integrated setting appropriate to Plaintiff's needs. Providing these measures would not cause Defendant to experience an undue burden or fundamental alteration in Defendant's services, facilities, or operations. Defendants were aware of Plaintiff's disabilities when they refused to make such accommodations. They further continued to refuse to make the accommodations even after Plaintiff expressly sought accommodations based on her disabilities on January 5, 2016 and in February 2016.

54. Defendant's discrimination against Plaintiff was caused in part by Defendants having no policies in place that would ensure that Plaintiff, and other individuals with a disability, are not excluded, denied services, or otherwise treated differently in the matriculation at MCW and their taking of the USMLE exams. This includes informing internal policies for detecting mental disabilities, referring persons with known mental disabilities to appropriate resources, and advising them of their rights under the ADA, including the right to request and receive accommodation so that she can graduate from a MD program in a manner that accommodates her disabilities. The absence of these policies created standards or criteria with the effect of discriminating against Plaintiff based on her disabilities, and perpetrating discrimination based on disability. Plaintiff and other disabled students are not able to fully enjoy the services, facilities, privileges, advantages and accommodations offered by MCW and its MD curriculum. The accommodations necessary for Plaintiff's disabilities would not cause undue burden on Defendants, including significant difficulty or expense, nor interfere with the mission of the school.

55. Lastly, Defendant discriminated against Plaintiff by failing to make reasonable modifications in its policies, practices, or procedures when such modifications were clearly necessary to ensure Plaintiff would have access to the services, facilities,

privileges, advantages or accommodations provided by MCW. Defendants failed to make reasonable modification even when Plaintiff requested that they do so on January 5, 2016 and in February 2016.

56. Plaintiff's good academic standing at MCW and post-graduation residency placement show that she is an "otherwise qualified" individual.

57. Plaintiff is informed, believes and thereon alleges, that Defendant, their agents and employees have, and continue to, violate the Rehabilitation Act of 1973 and the regulations promulgated thereunder, by excluding Plaintiff from participating in, denying Plaintiff the benefits and services of MCW's program, and subjecting Plaintiff to discrimination based solely on her disability, for the reasons set forth above.

58. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer hardship, anxiety, and interruption/cessation of her medical education.

59. Plaintiff is informed, believes and thereon alleges, that Defendants committed the acts and omissions alleged herein, with intent and or reckless disregard of Plaintiff's rights.

60. Because Defendant's discriminatory conduct is ongoing, and given Plaintiff's desire to continue her studies expeditiously, declaratory and injunctive relief are appropriate.

61. Plaintiff is entitled to declaratory relief, injunctive relief, compensatory damages, and reasonable attorneys' fees and costs incurred in bringing this action pursuant to 29 U.S.C. § 794a.

62. Injunctive relief is necessary as Plaintiff will suffer irreparable harm if she is not able to take the USMLE Step 2 exam expeditiously. While Plaintiff is diligently engaged in study and review for the USMLE Step 2 exam, her knowledge base is deteriorating with the passage of time and the loss of continuing academic support. Moreover, most medical licensing authorities require that all USMLE exams be completed within a seven-year period. Plaintiff has a likelihood of success on the merits for the reasons stated in this Complaint. Plaintiff completed her USMLE Step 1 in January 2014, and there is a chance that this lawsuit may not conclude in time for Plaintiff to complete all three steps

of the USMLE by 2021. Further, she has already paid over $217,214.50 in tuition to MCW towards her MD.

63. Wherefore Plaintiff prays relief as set forth below.

### THIRD CAUSE OF ACTION

#### Breach of Contract

64. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

65. In or about August 2010, Plaintiff and Defendant entered into an agreement whereby Plaintiff agreed to compensate Defendant in the form of tuition payments, in consideration for providing education services towards a MD. Plaintiff at all times made such tuition payments in the total amount of $217,214.50.

66. As material consideration, Defendants and Plaintiff agreed to be bound by a set of rules and procedures governing the school's relationship with their students, contained in the Handbook. These rules and procedures, *inter alia,* guarantee a student important due process rights, set forth herein, afforded to students in the event the school is considering the drastic step of dismissal and termination of Plaintiff's access to education services prior to matriculation. These are material components in the agreement between Plaintiff and Defendant, and form consideration in support of the contract. Plaintiff's decision to invest hundreds of thousands of dollars and time into pursuing an academic degree at the school was based, in part, by the understanding that she would be treated fairly and with due process in such circumstances.

67. Defendants dismissed Plaintiff in violation of basic and fundamental notions of due process and fairness, and the specific requirements of Handbook and the rules and procedures guaranteed therein, including, but not limited to, failing to give Plaintiff 1) advance notice that dismissal was under consideration; 2) the date, time and place of hearing; 3) a copy of the procedures relating to dismissal, including the right to appeal; 4) the right to present witnesses, data and evidence; 5) the right of student to legal and or

academic counsel or advisors at the hearing; 6) right to cross examine witnesses; 7) right to tape record the hearing.

68. If the Committee adjudicates a dismissal, the rules provide that in addition it must supply a written summary of facts supporting their findings, a statement of the action that the Academic Standing Committee has decided to take, and the effective date of the action. The rules further provide it must send this notice of this ruling personally, or by registered or certified mail.

69. The Academic Standing Committee followed none of the aforementioned procedures in dismissing Plaintiff.

70. In fact, the dismissal notice was not served personally or sent by registered mail. It was sent during winter break to her school address. Defendants knew, or should have known, it would not likely have been received by Plaintiff in a timely basis.

71. Defendants regularly communicated by email with Plaintiff, but failed to use her email address, or copy to it, on these critical communications. When Plaintiff was permitted to take the USMLE Step 2 a fourth time, she received both an email and letter correspondence, on April 3, 2015 and May 13, 2015, respectively.

72. Plaintiff performed all, or substantially all, of the material obligations required by her under the agreement and Handbook, including but not limited to paying tuition, attending classes, and maintaining good academic standing.

73. Defendant breached the agreement as set forth in the Handbook by the acts alleged herein, including, but not limited to, purporting to dismiss Plaintiff from MCW without a noticed hearing, opportunity for appeal and other procedural rights noted.

74. As a result thereof, Plaintiff suffered the loss of the value of funds contributed to MCW tuition in the amount exceeding $217,214.50, and the diminished earnings she will earn as a result of the dismissal.

75. Wherefore Plaintiff prays relief as set forth below.

## FOURTH CAUSE OF ACTION
### Promissory Estoppel

76. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.
77. In or about August 2010, Plaintiff accepted admission to MCW for the purpose of obtaining a MD, based upon the expectation she would receive one if she paid tuition, adhere to rules for student conduct, satisfactorily complete the coursework and clinical work required by the university and pass the USMLE Step 1 and Step 2, as set forth in the MCW Handbook. Plaintiff further understood that in the unlikely event that she faced dismissal, she would receive a noticed hearing and a chance of appeal.
78. At all times herein, such expectation was reasonable. Between August 2010 and late 2015, Plaintiff made numerous tuition payments based upon such expectation.
79. In December 2015, MCW dismissed Plaintiff without a noticed hearing, advisement of her procedural rights, opportunity to present evidence, and representation by legal or academic counsel. The dismissal was purportedly "final" and thus voided Plaintiff's right to further appeal.
80. Defendants violated MCW policy and their agreement with Plaintiff, as reflected in the Handbook, by failing to allow Plaintiff the proper procedure for dismissal.
81. Plaintiff had a reasonable expectation at all times stated herein that she would receive the procedural protections under the Handbook. Plaintiff performed all or substantially all of the material obligations the agreement required of her to do.
82. Defendants are being unjustly enriched by the acts alleged herein, in that it has been able to retain all monies Plaintiff paid in tuition costs from 2010-2015.
83. Wherefore Plaintiff prays relief as set forth below.

## FIFTH CAUSE OF ACTION

### Preliminary Injunction

84. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.
85. Plaintiff will be irreparably harmed if Defendant is not enjoined from enforcing Plaintiff's dismissal, and from preventing her from taking the USMLE Step 2 up to six

16

Case 2:16-cv-01370-PP   Filed 10/12/16   Page 16 of 19   Document 1

times, in a manner that accommodates her disabilities. Plaintiff will suffer financially, emotionally and academically for the reasons set forth herein.

86. Defendant will incur no harm, financial or otherwise, by the remedies Plaintiff seeks.

87. Public interest favors the reasonable accommodation of disabilities and continuous education, and disfavors disrupted education and forfeiture of years of study and funds, based upon arbitrary time limits on test taking, regardless of disability. Issuance of preliminary injunction would be in the public interest.

88. For the reasons stated in this Complaint, Plaintiff has a substantial likelihood of success on the merits because, at all times relevant herein, Defendant violated the federal ADA and Rehabilitation Act.

89. Plaintiff is requesting the Court enjoin Defendant from enforcing Plaintiff's dismissal, and from preventing her from taking the USMLE Step 2 up to six times, in a manner that accommodates her disabilities. Plaintiff can only take the USMLE Step 2 as an officially enrolled medical student.

90. The relief requested is the proper subject of an injunction as it is prohibitory, and even if it were affirmative, Plaintiff may still seek an injunction.

91. Wherefore Plaintiff prays relief as set forth below.

## SIXTH CAUSE OF ACTION

### Declaratory Relief

92. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

93. Plaintiff has claimed that Defendant's treatment of her disabilities in connection to her USMLE Step 2, and dismissal from MCW, is unlawful behavior under the ADA and Rehabilitation Act.

94. There has arisen an actual, present, and justiciable controversy between Plaintiff and Defendant as to the matters set forth herein, in this appropriate pleading.

95. A judicial determination is necessary so the parties may ascertain their rights, duties, and statuses.

96. Wherefore Plaintiff prays relief as set forth below.

**PRAYER FOR RELIEF**

1. An injunction prohibiting Defendants from enforcing the dismissal of Plaintiff, rendering it non pro tunc and requiring Defendant to return Plaintiff to status as a student for the sole purpose of re-taking the USMLE during the pendency of this action;
2. An injunction prohibiting Defendants from denying matriculation to Plaintiff on the grounds that she did not pass the test within three attempts;
3. An injunction prohibiting Defendants from denying matriculation to Plaintiff on grounds she took longer than 6 years to finish her degree;
4. An injunction prohibiting Defendants from using the purported dismissal of Plaintiff in any fashion to prevent Plaintiff from maintaining status for purpose of taking the USLME test and matriculation;
5. An injunction prohibiting Defendants from informing others of the (illegal) issuance of Plaintiff's dismissal at MCW;
6. An injunction prohibiting Defendants from taking any action to prevent Plaintiff from taking the USMLE Step 2 up to six times, in a manner that accommodates her disabilities;
7. For declaratory relief and orders as to whether Plaintiff was validly dismissed from MCW; whether MCW is prohibited from disallowing Plaintiff to take USMLE Step 2 up to six times; whether Plaintiff may graduate with a MD after passing the USMLE Step 2; whether Plaintiff may complete her requirements for MD in excess of 6 years.
8. An order requiring MCW to implement policies and procedures to ensure compliance with laws and regulations that provide fair treatment of, and protect discrimination against, individuals on the basis of disability;
9. An order requiring MCW to implement policies and procedures to recognize individuals with disabilities, and refer individuals with disabilities to proper resources so that they may enjoy fair treatment at MCW and be protected against discrimination;

14. For attorneys' fees and costs of suit herein incurred;

15. For prejudgment interest at the maximum legal rates; and

16. For such other and further relief as the Court may deem just and equitable.

Dated: October 12, 2016					MILLSTEIN & ASSOCIATES

								By: ___*/s/ David Millstein*___
								David J. Millstein, Esq.
								Attorney for Plaintiff JANE DOE